United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Esther Fettman, on behalf of herself and all others similarly situated, Plaintiffs, | )<br>)<br>)<br>) |
| v. | ) Civil Action No. 22-22643-Civ-Scola |
| Midland Credit Management, Inc. and Encore Capital Group, Inc., Defendants. | )<br>)<br>)<br>)<br>) |

### Order Compelling Arbitration

Plaintiff Esther Fettman, in this putative class-action case, seeks to recover from Defendants Midland Credit Management, Inc. and Encore Capital Group, Inc., for damages she says she suffered as a result of the Defendants' alleged illegal practices associated with their attempt to collect a debt. (Compl., ECF No. 1-3.) After removing the case, from state court to this Court (Not., ECF No. 1), the Defendants jointly filed a motion to compel arbitration, relying on an arbitration provision within an agreement governing a credit-card account Fettman opened with Comenity Capital Bank. (Defs.' Mot., ECF No. 12.) Fettman opposes the motion, arguing (1) the Defendants cannot enforce the arbitration clause because they are neither parties to or assignees of the Comenity account agreement; and (2) her claims have nothing to do with the terms of the Comenity agreement or use of the Comenity credit card account. (Pl.'s Resp., ECF No. 13.) The Defendants have replied, and the motion is therefore ripe for determination. (Defs.' Reply, ECF No. 14.) After careful review, the Court **grants** the Defendants' motion and orders the parties to submit their disputes to arbitration. (**ECF No. 12**.)

1. **Background**

Fettman opened an account with Comenity in 2015. (Defs.' Mot. at 2.) In accord with Comenity's practice, it then sent Fettman her credit card and a copy of an agreement that governed the terms of her account. That agreement contains an arbitration clause. (*Id.*) At some point, according to the Defendants, Fettman stopped making timely payments on her account. (*Id.*)

Thereafter, the Defendants say Comenity charged off the account and sold "all rights, title and interest" in the account to Midland, in June 2020. (*Id.*) Nearly two years later, in April 2022, the Defendants sent Fettman a collection letter seeking to collect $2,100.22 they said was past due and owing. (Compl.

¶19; Ex. A, Apr. 2022 Letter, ECF No. 1-3, 12–13.) Fettman claims the letter is deceptive, false, and misleading, in various ways, and designed to confuse, harass, and disadvantage her, all in violation of both the Florida Consumer Collection Protection Act and the federal Fair Debt Collection Practices Act. (Compl.) As a result, in July 2022, she initiated this litigation.

## 2. Legal Standard

The Federal Arbitration Act creates a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Courts must compel arbitration if (1) the "plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles" and (2) the "claims before the court fall within the scope of that agreement." *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (quoting 9 U.S.C. §§ 2–4). Any party resisting arbitration must establish that "the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000). Further, "[t]he party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Herrera Cedeno v. Morgan Stanley Smith Barney, LLC*, 154 F. Supp. 3d 1318, 1323–24 (S.D. Fla. 2016) (Ungaro, J.) Ultimately, any "questions of arbitration must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26 (quoting *Moses*, 460 U.S. at 24).

## 3. Analysis

Fettman seeks to avoid arbitration, arguing that (1) the Defendants cannot enforce the arbitration clause because they are neither parties nor assignees of the agreement; and (2) her state and federal consumer-protection claims have nothing to do with her account agreement. The Defendants counter, first, that Midland, as an assignee, and Encore, as Midland's parent company, can enforce the agreement and its arbitration clause. And second, say the Defendants, Fettman's claims fall squarely within the broadly worded arbitration clause. The Court agrees with the Defendants on both fronts.

### A. The Defendants can enforce the arbitration provision despite not being signatories or parties to the initially executed account agreement.

As an initial matter, Fettman does not dispute, generally, that she is bound by the account agreement's arbitration provision. Further, other than her

cursory claim that the Defendants are not assignees of Comenity, Fettman offers no rebuttal to the Defendants' evidentiary showing that Comenity "sold all rights, title and interest in [Fettman's] Account to Midland Credit Management, Inc." (Gothard Aff. ¶ 7, ECF No. 12-1; Gothard Aff., Ex. 2, Bill of Sale, ECF No. 12-3, 2; Romney Aff. ¶ 6, ECF No. 12-6.) Accordingly, the Court concludes that Midland is indeed an assignee of Fettman's account.

Under Utah law, which governs the agreement according to its terms (ECF No. 12-2, 5), an assignment gives the assignee the same rights as the assignor. *Jack B. Parson Companies v. Nield*, 751 P.2d 1131, 1133 (Utah 1988). As a result, Midland stands in the shoes of Comenity and is therefore entitled to enforce the agreement's arbitration clause. *CCAM Enterprises, LLC v. Dep't of Commerce, Div. of Occupational & Prof'l Licensing*, 324 P.3d 648, 650 (Utah Ct. App. 2014) ("[A]n assignee stands in the shoes of its assignor [and] has rights and liabilities identical to those of its assignor.") (cleaned up); *see also Funderburke v. Midland Funding, L.L.C.*, 12-2221-JAR/DJW, 2013 WL 394198, at *5 (D. Kan. Feb. 1, 2013) ("[S]ince Midland is an assignee, it steps into the shoes of Citibank and, thus, may enforce the rights set forth in the agreement, including the right to submit a dispute to arbitration."). Fettman fails to provide any counter to this unremarkable point of law nor does she point to anything in the agreement or the parties' relationship that would otherwise prevent the assignment.

Under the arbitration clause, Encore is also afforded the right to compel arbitration. In defining the parties that are subject to arbitration, the agreement includes "Comenity Capital Bank, *any parent*, subsidiary or affiliate of the Bank and the employees, officers and directors of such companies." (Amgt. I.C.1(2)(a), ECF No. 12-2, 7.) Since Midland has stepped into the shoes of Comenity and the parties agree Encore is Midland's parent company, Encore, by the plain terms of the agreement, is included as a party that can enforce the arbitration clause.

In sum, then, and contrary to Fettman's protestations, Midland and Encore are entitled to enforce the arbitration provision.

### B. Fettman's claims fall within the scope of the arbitration clause.

Fettman insists that, in any event, her claims do not fall within the ambit of the agreement's arbitration provision. (Pl.'s Resp. 4–6.) According to Fettman, none her statutory claims relates in any way to her account agreement. (*Id.* at 5.) The Court disagrees.

The scope of claims covered by the arbitration clause here is notably expansive. The agreement defines "Claim" as:

> ***any claim***, dispute or controversy between you and us ***that in any way arises from or relates to*** this Agreement, the Account, the issuance of any Card, any rewards program and/or any prior agreement or account. . . . "Claim" has the ***broadest possible meaning***, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based on contract, tort, consumer rights, fraud and other intentional torts, constitution, ***statute***, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief).

(ECF No. 12-2, 7 (emphasis added).) Fettman's position that her claims do not fall within the arbitration clause because they have nothing to do with the "performance of duties specified by the contract" is unavailing. (Pl.'s Resp. at 5 (quoting *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001).) The arbitration clause here is much more wide ranging and not limited solely to claims *arising out of* the contract itself. It is enough if her claims merely *relate to* the agreement.

    The agreement's arbitration provision plainly encompasses Fettman's statutory claims in which she alleges the Defendants violated provisions of the FDCPA and FCCPA in seeking to collect on amounts they say are due under her account. This is especially so where the clause itself provides that "Claim" is to be afforded it "broadest possible meaning" and specifically includes statutory claims. *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584–85 (1960) ("In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.") Fettman fails to provide any support for her contrary position that arbitration should not be compelled. *See id.* at 582–83 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.")

### 4. Conclusion

    For the reasons set forth above, the Court **grants** the Defendants' motion to compel arbitration (**ECF No. 12**) and orders the parties to submit their disputes to arbitration. This case is **stayed**, upon the Defendants' request,

pending arbitration.* The Court orders Fettman to advise the Court once the arbitration is terminated, the claims at issue are otherwise resolved, or if any claims are not resolved through arbitration.

In the meantime, the Clerk is directed to **administratively close** this case. Any pending motions are **denied as moot** but may be renewed if appropriate if this case is reopened.

**Done and ordered** in Miami, Florida, on April 7, 2023.

_____
Robert N. Scola, Jr.
United States District Judge

---

* *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Intern. Union AFLCIO-CLC v. Wise Alloys, LLC*, 807 F.3d 1258, 1268 (11th Cir. 2015) (pointing out that a stay, as opposed to dismissal, pending arbitration is mandatory where one of the parties applies for such a stay).